May it please the Court. Your Honors, my name is Thomas Rudin. I'm representing the Petitioner, Hay. The Real ID Act, I think, clarifies, makes it certain that retroactively this Court can look at the question of law. The central question here is the moral turpitude involved in the hit-and-run conviction that Mr. Hay suffered. He had lived in this country for over a decade, had come from Cambodia, lived with his sister, peacefully was working, but did a wrong thing. He left the scene after he hit a, apparently hit a pedestrian who was seriously injured. Under California statute, under California statute and case law, relying on People v. Bautista, the government has advocated that Mr. Hay is, has shown moral turpitude by his conviction. However, the standard is very different from what is required under Federal immigration law. Traditionally, it's been broken into, offense has to be either fraudulent or encompassing base or depraved evil intent. Under the statute, the California statute, hit-and-run, those elements are not necessarily required at all. It's been interpreted to be a constructive knowledge standard. In other words, the driver, the only real mens rea is that the driver has to be aware of an accident. If the driver hears something, a car, has a jarring sound, the driver should have stopped, gotten out, checked whether it was a tree branch, a piece of property, could have been somebody's property, could have been another car, could have been a person. So we can assume for the purpose of looking at this statute that California requires at least knowledge that an accident has occurred. That's correct. What do we make of the California State court decisions that basically say that when you know there's an accident and you leave, that evidence is an intent at least to hide from the authorities your identity and your responsibility for what's occurred? Do we ignore that, not pay any attention to it? No. I don't think we need to ignore it, but I think we need to understand the context that they're trying to, in Bautista and I think Brahe's case illustrates, this also is trying to understand whether there's any reasonable basis to believe that the witness, in this case we're talking about a witness who's testifying whether they can be impeached, whether that conduct has any reasonable possibility if it's reasonable to believe that such conduct should throw into question their credibility as a witness, whether it indicates some type of shadiness about the truth. Well, here's what the California court of appeals in Bautista said. It is more likely that one who is involved in an injury accident and leaves the scene before giving the required identifying information is seeking to evade civil or criminal prosecution. At the very least, then, a person convicted of violating section 2000 20,001 has exhibited an intent and purpose of concealing his identity and also his involvement in an injury accident. Doesn't that sound like intent to me? Right. Although the constructive knowledge is really a should-have, again, it's more than negligence, but it's the driver hit something or there's some reason that the driver should have checked. The driver, for whatever reason, did not check. That's enough under the statute. I understand the reasoning of Bautista, but I would submit that it's a very different purpose that the Court is looking at. Under Federal law, I have not found any case which has under which constructive knowledge suffices to reach the higher standard of necessarily involving evil intent or evil status. So in this case, I don't think it is appropriate to use the California statute looking at a different purpose and raising for the Federal immigration purpose. Give me a factual example of an instance in which a driver is involved in an accident, is aware that there's an accident, and leaves, would not have the intent to avoid civil or criminal prosecution. Well, this particular case, although the particular facts of the case are not germane to the legal analysis, it's got to be the statute on its face. But in this case, Mr. Hay testifies – well, he pleaded guilty, so it doesn't really much matter, but he hears a bump. Now, the question is, did he use bad judgment? Of course he did. He went on. It happened that the man – there was a man that was hit. It could have been a piece of property – it could have been property. In that case, it would have been a misdemeanor statute. It's not – it's not a felony statute. You never would have reached the issue in Batista about the witness, because it only applies to felonies. In other words, the conduct is foolish or bad or negligent conduct, but it doesn't rise to the level of reckless or even knowing that he's harmed a person. So, you know, if it was another car that he had, he had clipped a parked car, nobody was injured, he would have been perhaps convicted of a misdemeanor, hit and run, leaving the scene, and you wouldn't even reach this level of analysis. All the Federal cases that have applied moral turpitude have required either intentional fraud, which I don't believe this case rises to, or some type of evil intent, a real not only a knowledge of the underlying facts, but a real desire to go beyond that. There was even a case that I cited, a state of Washington, a malicious mischief-type offense, that it requires evil intent within the statute, but it's – it was deemed that there's a lower level and that was not sufficient for purposes of immigration, a moral turpitude offense. It was not reported on that basis. Briefly, I'd just like to mention the withholding. I know that's a high standard, a probability standard, but the presentation and the version given by the I.J. based upon the State Department's reports seemed to me just excessively sunny. It portrayed a constitutional monarchy as opposed to a – the regime there is admittedly not as bad as the Khmer Rouge that Mr. Hay and his family were ravaged by, but it's on the other hand still a very dangerous place for a political opponent of the regime to be sent back into. But I'd like to save a minute or so. Thank you. Mr. Hay, 13 years after arriving in the United States, applied for asylum. He got a hearing before the immigration judge, who denied his claim for lack of timeliness and merit. He appealed to the board where he was heard and his claim was again denied for timeliness and on the merits. And we reiterate our argument that this petition for review should be dismissed for lack of jurisdiction and timeliness. Before I go on, I would like to address this Court's concern in the July 12th order that was issued with respect to the Real ID Act. In this case, the Real ID Act has no effect on the one-year bar for asylum. Under Section 106C, the Real ID Act, in cases involving criminal aliens, this Court does have jurisdiction to look at constitutional questions and questions of law. In this case, a one-year bar, that's – that is a factual question. Any exceptions to it are factual. And in this – and it is a factual question. Petitioner raised moral turpitude. Again, that has no – that is not applicable in this case, because Petitioner has not exhausted it. He has never raised this – this issue to the board. And under 242d1, that issue is not before this Court. The Real ID Act does nothing to do away with exhaustion. Moreover, even if this Court were to find jurisdiction, Petitioner had conceded – conceded this at his hearing, at record at page 74. Roberts. If – if we were to look at the California statute, do we apply the modified categorical approach? Is that the government's position? It's the government's position, Your Honor, that because they – there's no jurisdiction with respect to that issue, because this was not raised at the time. I have a question with an if. So assume that we get to the point to where we look at the statute, do we apply the modified categorical approach? I'm not sure, Your Honor, but I would like to point, Your Honor, to the record at page 74 where Petitioner has already conceded that he committed a crime of moral turpitude. That's really not an issue here anymore. It's on page 74 of the record. I would also like to address this withholding in cat. I actually don't think you answered Judge Hawkins' question. It would be helpful to the Court if you did, because we're trying to analyze these questions of law. And I know you want to argue something different, but we're interested in if we reach that question – and this is your opportunity to talk to us about that – if we reach the question of moral turpitude, is it your position or the government's position that we apply the categorical or the modified categorical approach in the context of the moral turpitude that's asserted in this case? Well, again, it would be our position that they've conceded this point in the record. It's fairly clear. So there's no need to apply those approaches, Your Honor, because I understand your answer, but that still doesn't answer Judge Hawkins' hypothetical question. In the hypothetical, I'm not sure, Your Honor. I would have to look at it. So do you think the statute's clear on its face that this crime involves one of moral turpitude or not? I think that that issue is not before this Court, because it has not been exhausted. And even if it is before this Court, they have conceded that at page 74 of the record. I looked at 74. I didn't quite see that concession that you're talking about. Sure. I agree he says I agree with regard to the charges. Well, but the question is he didn't say he didn't say he just, you know, he answered the question the way you answered Judge Hawkins' question. He didn't answer it. He just said I agree that I have the charges. He didn't agree. An agreement would have been yes. He said I agree in regards to the charges. Well, I think it's a matter of semantics, Your Honor. He says do you also agree that you're in the The waiver is unequivocal since it's clear, voluntary. I just I read that, and I said, gee, I don't see that as a concession, and he certainly is litigating it here. Now, if the government doesn't want to answer the question or enlighten us as to the government's view of the law, that's fine. But, you know, you often proceed at your peril if you don't. Well, like I said, Your Honor, I can't answer that question. I haven't looked at it or researched it with that respect because this is such a strong argument as far as exhaustion and the fact that he had conceded in this case. I would not I think you're going to lose on concession, at least as far as I'm concerned, because that doesn't look like it's conceded at all, and he doesn't concede it in any of his papers. Well, we would respectfully disagree with respect to that, Your Honor. But we would also argue that this wasn't raised before the board. So it fails on that point. It's not exhausted. Finally, with respect to withholding in CAD, this case in the recent this Court in the recent case of Unukulalu indicated it could review with respect to criminal aliens the withholding in CAD, but in this case the record of evidence does not compel reversal. Petitioner claims he fears the communists in the Khmer Rouge in Cambodia, but they're no longer in power and the Khmer Rouge members are on trial for their crimes, and the party that he's a member of has political power now. They've won a number of seats, according to the State Department. See, if I understand sort of the framework of your argument, you say that there was a determination that the petition was untimely and we can't undo that, right? That's correct. That there was a concession with regard to a crime of moral turpitude? Well, no. Our argument is that they're they have not they can't raise that issue here. They have not exhausted it. I'm just going off the list. You're saying we can't review the timeliness. There's a concession on the crime. Even if there's not a concession on the crime, they didn't waive it before the board, right? Right. Yet you're prepared to argue that substantial evidence supports the cat denial? And withholding. Okay. But you were not you didn't come prepared today to talk about which approach we should take if we actually look at the California statute? Well, it is our position, I guess. You know, we understand your position. My question can be answered with a yes or no. Did you or did you not come prepared today to discuss which approach we should take as a court if we look at the California hit-and-run statute? Well, as far as You can start with a yes or a no. Well, I don't think I can give a yes or no answer to that because Can't tell me whether you came prepared to discuss that today? That's all I'm asking. No, with respect to the categorical or modified approach. I would have to look at that more carefully. However, in Bautista, it is our reading of Bautista that a crime that Petitioner committed is an offense that involves moral turpitude. So you're not prepared to discuss which approach we should take, but you do point us to information that's outside the pleading and charging documents. Is that right? That's correct. Okay. But it's in the record. And the only thing that the government put on in terms of this charge was the charging documents. I mean, this offense. I'm sorry. It was the charging documents. That's the only thing in the record of this case. Yes, Your Honor. We don't have the plea. We don't have the plea colloquy. We don't have the judgment, do we? We just have the charging document. Right. We don't, Your Honor. But that's outside this record. Well, that's the point. What I mean is that's the government burden to put on this. You know, we see a lot of categorical, modified categorical approaches. And in most cases, the government puts on to be successful, they put in evidence the plea, the conviction, the charging documents, or the indictment, as the case may be, and anything else they think is judicially noticeable because that's the charge. And I guess all we have here is the charging document. Which would not be adequate under most of our case law. Well, Your Honor, but there's nothing else really available. I know you requested that. And our first position, of course, is that's outside the record. But we did call our client, and nothing else was available. That's all they had. The other, again, Your Honor, this issue is not before this Court because under 242d-1, which deals with exhaustion, this has not been exhausted. And we need to call your client. Who did you call? I called DHS, where the file was in Bakersfield. Who? DHS, Department of Homeland Security in Bakersfield. Well, they didn't check the California courts? Again, Your Honor, under Fisher I.N.S., this Court's review is confined to the record on appeal. What about that? You know, you keep going back to the same thing. But it's been easy for them to call the Court, see if the records were there, and ask for certified copies. Wouldn't have been hard to do. Or send an FBI agent over there and have him pick them up, have them certified. Well, you see, you know, I contact, again, Your Honor, the review is, you understand that argument, but I contacted DHS and they just did not have it. Right. But I think you're missing a part of the point is that often the government comes in here when it sees a red flag raised by the Court that the quantum of evidence of judicially noticeable documents isn't in the record and hurts them. They come rushing in with a supplemental request to expand the record under 10E and say, I wish you would, these aren't judicially noticeable, they should be before the Court, because it helps the government to get it before the Court. That's what we're saying. Well, I understand. We see this in a lot of other cases. I should, so the shock expression on your face, I think is, you know, maybe it's your first case, but on a Taylor, it's obviously your first modified categorical approach or categorical approach. But this is not uncommon. These aren't uncommon questions. Well, Your Honor, but however, in this case, I understand that it's in other cases. But in this case, we don't even get to that because they have not exhausted, they have not raised this before the Board under 242d1. It is not before this Court. That is our position. I understand your position. And if you even go beyond that position, well, they conceded at page 74 that we read we respectfully disagree with the Court that this is a concession on page 74 of the record. For reasons stated, this petition for review should be denied. Thank you. Thank you. All right. We have a minute to record. I'd just like to briefly address the exhaustion requirement. Here, of course, Mr. Hay did not file an appellant's brief with the BIA. In his notice of appeal, admittedly, he did not in great detail or elegantly raise this issue of moral certitude going from the IJ's ruling. But he argued that before the IJ under the heading of adjustment of status, which is one of the broad themes. Your argument basically is that when the Board adopted the IJ's opinion on adjustment of status, it took all of it with it, which included the contention on moral certitude, right? I think as a matter of reality, that's what seemed to have happened. I mean, if the BIA certainly can issue a new decision, but when it adopts the IJ's decision as its own, then it does so at its own peril with respect to exhaustion questions, right? That's your argument? Yeah. Thank you. Matters submitted will come to the third matter on the calendar. That's U.S. versus Correa-Rodriguez.
judges: Pregerson, Hawkins, Thomas